on behalf of the Avalon, Mr. Christopher Turner, on behalf of the Avalonians, Thomas W. Dillard. Gentlemen, as you notice, Justice Zinoff and I are present. Justice Hudson is part of this panel. He was unable to be with us this morning, but as you also know, all of these arguments are recorded audially, and he will be reviewing your arguments prior to our deliberations when he has a chance to get the tape. So you may proceed when you're ready. Good morning, Your Honors, Counsel. May it please the Court, I am Christopher Turner, the Assistant Attorney General here on behalf of the plaintiff, Avalon, the people of the state of Illinois, ex rel. Illinois Attorney General. This Court should reverse the Circuit Court's order that grants summary judgment in favor of Defendant Julius Kole and denied summary judgment to the Attorney General. Anthony Crespo died in 2002. In October 2003, as the personal representative of the Crespo estate, Defendant Kole was required under federal law to file the federal estate tax return, which he did. And because he was required under federal law to file the federal estate tax return, he was also required under the Illinois State Tax Act to file the Crespo estate's Illinois tax return, which he did. In August 2006, the Internal Revenue Service completed its audit of the estate's federal tax return and issued an examination report that increased evaluation of the Crespo estate. What would have happened here if the IRS had never audited the original document? There would have been no increase to the state tax credit and no increase to the Illinois state tax. It would have not been under the 2002 Act as it applied. Do you have an obligation to review what's filed by a filer in Illinois? Yes, the Attorney General is charged with reviewing the state tax return as well as the federal return, which is attached to it. And they go through and make sure that the numbers that are being put in are proper and then actually make sure the assessment of the Illinois tax based upon the claims of the federal estate tax return is correct. But do you have an obligation to review the federal return? Only to make sure what information is being claimed in it. So if someone were to submit a federal return that said the estate was worth $20, you'd be like, okay, as long as they file a return, that's good enough for us? Well, actually, at that point, if the estate was worth $20, there would be no requirement to file a return. Well, okay, I'm being facetious. My point is, at what point do you have an obligation to look at the federal return and say, hey, this is good enough? Under the 2002 Act, the way the statute was schemeworked, there was no obligation at all. That was not the role that the Attorney General had at all. Yet you sign off on it. We do. We sign off on it. The numbers are correct, but based upon their assessment of the valuation in the federal estate tax process. But you just said the numbers are correct. So the numbers in the federal return or just the numbers in the state return? The numbers in the state return that they reflect the numbers that are being claimed in the federal estate tax return to make sure that they accurately then reflect that federal estate tax return. Okay. And that certificate of discharge then discharges all liability. Is that correct? Your Honor, it does discharge all current liability based on taxes which were due under the Act at the time the certificate was issued. Where does it say current liability only? In the statute, Your Honor, because the Section 10 that authorizes the issuance of the certificate says it will discharge. First, the Attorney General, in order to issue it, must be satisfied that the Illinois transfer tax is fully discharged. And if they do, they issue the certificate to discharge liability for that Illinois transfer tax. Section 2 of the Act defines Illinois transfer tax as any tax that is due to the state. That means the tax that is under the Act is then currently due at the time that the certificate is issued. It's not currently due. It's currently due at the time that the certificate is issued. It does not say any additional tax that may be due in the years in the future. But counsel, that sort of begs the question. It's like a chicken and egg. The tax was due. If the estate was worth what the Fed said it was worth, then the tax was due then. This isn't like new tax. Yes, it is, Your Honor, because of the way that this system piggybacks on the federal estate tax system. Under the Act, the liability, first of all, even under Section 6, the initial taxes are due based upon the due dates. They say they're actually due. The return is due and the initial tax is due based upon the due dates under the federal estate tax system. Then under Section 7, which governs the additional tax and piggybacks on the IRS audit process, the additional taxes which arise based upon the IRS audit are due three months after a series of listed events, and those events are events that are occurring within the IRS audit process, whether you file an amended federal estate tax return, whether you pay the tax, or whether you accept in writing the IRS's increase. So once that is paid, then it's the practice of the Attorney General to issue a second certificate of discharge? Yes, Your Honor. It's been its practice for over 20 years now. It entitles it a supplemental certificate. How many supplemental discharges would you say the Attorney General has filed? I don't know, Your Honor. I know that this comes up a small minority of times that you'll have additional taxes come up. So percentage-wise? I mean, I'd be speculating, Your Honor. I think it's less than 10 percent, though, probably less than 5 percent of the estate tax that are returned. So it would be very unusual for someone to expect that the first discharge isn't the end of the scenario. It is, yes. It is a very small minority of the cases. However, they do know the executor or the person representing the estate is filing their estate tax returns with both the IRS and with Illinois, and they are fully aware that they are subject to a three-year audit window when the IRS can begin their audit and that they may be subject to an adjustment or increase in the estate tax credit. And Section 7 of the Illinois Act makes very clear then that when that adjustment happens, when there is an increase in the federal estate tax system, the additional tax that will be due under the Illinois estate tax. But Section 10c regarding personal liability really just says, or the language is, shall be personally liable for the Illinois transfer tax. It doesn't say any supplemental tax that may be due annually. Again, Your Honor, actually, by saying the Illinois transfer tax, it does because Section 2 defines the Illinois transfer tax as the tax which is due to the state with respect to the tax of the transfer that gives rise to a federal estate tax. So when does it? Being due at any time. Well, whatever is currently due. I mean, obviously, it cannot be an Illinois transfer tax. We're not referring to a future tax that isn't yet due because it wouldn't then not be. It would be unpaid, right, because in order for it to be unpaid, it still has to become due and then you don't pay it. Then the personal liability applies. And if you read this, so Illinois transfer tax is used throughout the estate tax act. It refers to whatever tax has become currently due under the act. For 10c, that's the personal liability that gets imposed. And then in Section 10e, which provides the certificate of the discharge, that would be whatever tax has already become due that is then released. And that would be what you would expect. It's not usual to provide a release for a future claim that has not yet come due. That happens in minority cases. Usually under common law, Illinois common law, you would construe a certificate or a release against such a presumption and require very explicit language to that effect. So here, in order to read the two parts of the statute, Illinois transfer tax consistently throughout the act, it always applies to whatever tax has become due. If you don't read it that way, for instance, if you read it the way that— I mean, it really—Defendant Cole, when he suggests that 10e is authorizing a discharge for a future tax, he's suggesting a reading of the Illinois transfer tax, which none of the parties have proposed elsewhere in the act, right? The circuit court granted someone judgment actually on its reading of the statute to not impose personal liability on any additional tax, regardless. And if that was the case, if you read the act that way, that would mean none of the enforcement provisions in Section 10 would apply to the enforcement or collection of the duties to pay an additional tax, right? Because they all apply to the Illinois transfer tax. But in this situation, it's the estate that owes the tax. Yes, it is what— So if we—I mean, if we accept your position, then in future cases, even though you get a release and say, okay, all the taxes are fine, everything's great, we're going to go ahead and disperse the estate, but you as the executor are for three years on the hook in case somebody made a mistake. Isn't there—aren't you then building in an incentive to say to executors, do—sit on the estate, don't disperse any of the funds until that three-year window has expired? Well, it does provide an incentive for them to review how assertive or aggressive they are being in the valuation that they're claiming in the Illinois state tax system. Yeah, but let's assume for the sake of argument that your average executor is not also someone qualified to value an estate. They rely on others. Well, for purpose of the act, they are essentially the taxpayer. I mean, they're the ones with the most knowledge of the estate. They're the ones with the illegal control over the estate, and therefore have actually had the legal obligations, both under the law elsewhere but specifically under the Illinois State Tax Act. But nonetheless, aren't you supporting a policy that says to executors, first of all, don't be an executor of an estate because you're— if there's any problems with it, you're going to be personally responsible. But also, aren't you instilling a policy to say to executors, don't disperse this money, don't disperse anything until that three-year window has expired? Because even though the attorney general has given you a release and saying everything is just jank, not so. There would be incentive to be more prudent about it and to hold money back. Certainly, there'd be no reason for them ever to hold back the entire estate. But yes, if they believe, and I believe that executors often will hold on to it. How do you pick and choose what to hold back, then? Well, the person in the best position to know would be the executor. They're the ones who have the control. They're the ones with the most knowledge of the assets and the valuations that are being made. They're the ones who hire the attorneys and the accountants to value it. They're the ones who decide to sign off on whatever claims they make. So if there's anybody who is in the best position to know, it's them. And the General Assembly has made the decision that then, therefore, they will have the personal responsibility for that. Now, I mean, this is a system that's been going on for 20 years now, over 20 years. As in the case we can cite, Burris v. Boger from a 1994 case, which applied the same statutory scheme. I mean, right there, it's in the record on appeal. The record in that case included a certificate of discharge that was given afterwards. There was an IRS adjustment, just like here. The estate submitted a 4890 waiver. About how many cases would you say, on a percentage basis, have an IRS audit? Again, I just don't know. I know it is a minority, though. Minority, like 5% minority? Minority, like 49%? Minority, more like I think in the 5% range, more than the 49% range. But I don't know, Your Honor, what the percentages are. It's also that we don't know all the cases that, frankly, we, the Attorney General, ends up having to rely on what information we end up getting, either from the taxpayer or the IRS. So we don't know if there's ones which we ended up missing, just simply because no one's ever informed us about them. So what do you do? Are you just a paper counter? I mean, is that your function here, to say, okay, we have a piece of paper from the feds, a piece of paper from the executor, okay, you're done? Is that all you do? No, we do apply, yeah, we do make sure they're making the claims, and we do make sure that the estate tax has been calculated correctly based on those numbers. But yes, Your Honor, under the old inheritance tax system, which before, we had a whole department of auditors, over 100 people, I believe, that was their job. They were essentially like the Internal Revenue Service. They audited the system. Since then, there's now a small division, which in addition to doing all the other revenue collections, is in charge of enforcing the Estate Tax Act. And it does not take any of those type of auditing responsibilities, except for now, with the federal estate tax reform, things have changed somewhat, since you can have the situation where you have no filing under the federal estate tax, but you still owe a tax under the Illinois Estate Tax Act. But those end up as being a small minority of gap estates. I'm sorry, you lost me there. A gap estate? A gap estate. That is, they're in the gap where there's no federal estate tax, where they never file an estate tax return, but they do now owe a tax under the Illinois Estate Tax Act. Oh, I see. But that's under the statute. But then, in order to deal with that, the statute was amended to apply to, with new provisions to apply to estates for people who died after 2002. That amended act is not an issue here. It's the 2002 Act, which is at issue here. Now, don't you think that the statute is ambiguous with respect to not including the specific terminology, supplemental or tax that may be due in this personal liability section? No. Go ahead. I'm sorry. We don't believe that it is ambiguous. However, we understand, obviously, the circuit court came up with the opposite reading of us with what Section 10c means. Now, we think the language is plain. In fact, it doesn't use the term additional tax in 10c itself doesn't render it ambiguous. The definition is clear. If you apply the definition of Illinois transfer tax to Section 10c, as well as the rest of Section 10, then it's clear that it includes any additional estate tax that has become due under the act. However, to the extent that the court believes that there is an ambiguity, that, in fact, the circuit court's reading was reasonable, as well as ours being reasonable, then, yes, you should look at the overall purpose and design of the act. The purpose of the act is to pick up the entire available estate tax credit under federal estate tax law. And it's been designed through the provisions. It's designed to do that. It's designed to do that by coupling itself and piggybacking on the federal estate tax process. That's what Section 7 of the act, that's the purpose it serves, in order to piggyback on the IRS audit process. However, The original filing or just the audit process? Section 6 relates to the original filing. Section 7 to the IRS audit process, which then may not result in an increase to the state available estate tax credit. How? Because the IRS might increase the valuation of the estate. And then just simply applying the numbers under the Internal Revenue Code, you'll get an increase to the federal estate tax, but you'll also get an increase to the available estate tax credit just as a matter of applying the equation. All right. Just a quick question before you. Counsel has an opportunity to argue. Are you asking, in addition to asking that we reverse the finding of the trial court in favor of the defendant, are you asking us to find in your favor or for a remand? Well, we're asking. We're also asking that the court would find in our favor based on our summary judgment motion that was briefed below. The circuit court never reached it since it ruled against us on defendant cold summary judgment motion. The question is, what are you asking for? We are asking that you also reverse the circuit court's order to grant us summary judgment based on our motion for summary judgment. Because all the elements have been met. For liability under Section 10C, there is no genuine issue of fact. And yet, if we buy your hearsay argument, have a seat. You'll have a chance to reply. Thank you, Your Honor. Counsel? Thank you, Your Honor. May it please the court? Your Honor. I'm Tom Diller, representing the defendant, Julius Cole. If someone told me a week ago today I'd be in this appellate court arguing about the Illinois transfer tax, I would have said something like, yeah, we're about to have seven straight days of 80-degree weather. Being new to this case, I immersed myself in it over the last few days and I noticed a couple of things. First and foremost, the statute does not mention most of the words that the state uses to describe what they're asking for in this case. The statute says, estate tax. And I'll read it specifically directly from Section 2 of the Act. Illinois estate tax means the, the tax due to this state with respect to a taxable transfer that gives rise to a federal estate tax. It does not say any tax due. It does not say all tax due. It does not say all taxes including additional taxes. It doesn't say supplemental taxes. Those are all different terms that the state has used in connection with this case from beginning until this very moment. In fact, in its complaint, the state uses the term supplemental estate tax. That term is nowhere contained in the entire statute. The word supplemental appears in Section 6 and 7 solely to refer to supplemental filings of returns. It does not refer to any supplemental tax. But doesn't 6C clarify the duties of the federal filer and require payment of all estate tax returns and all estate taxes? It does, Your Honor. And it appears then to be in conflict with Section 10C, the personal liability section. Section 10C is pretty clear in saying that it is liability for the tax, which incorporates the definition under Section 2. You mean the estate tax? The estate tax, correct. Thank you. It does not make any reference to additional tax, supplemental tax, added tax. And just to point out a couple of the places where the state has used this language in addition to the complaint, because this was confusing to me to know exactly what we were looking for. In a letter that was sent to my client back on May 21st of 2007, this is at page C-15 of the record, and it's attached to the plaintiff's complaint, it refers to supplemental Illinois estate tax in quotes. In a letter dated August 17, 2007 to my client at page C-16 of the record, again attached to the complaint, it makes reference to the Illinois estate tax. Now, what they're doing in both of those letters is they're attempting to collect the tax, or the amount, that they're trying to collect and asking this court for today. In a letter dated April 21, 2009, the Attorney General sent a letter, or asked my client for payment, regarding, quote, Illinois supplemental estate tax. Three different ways to refer to what they're asking for. That's at page C-18 of the record, and again attached to the complaint. In not one of these letters did the Attorney General inform my client that he could be personally liable, and that's the real issue here, personally liable for the amounts that the state was claiming were due. If your client isn't personally liable, what person or entity is liable for the additional tax uncovered by the audit? It would be the transferees who received the property and who received the benefit of the estate. It is clear that the statute makes the executor liable for what's defined as the estate tax under the Act. It is also clear that it does not make the executor liable for additional tax, at least not as it's written. And I think for the state's view to prevail, we have to imply words in the Act that are not there, and we also would have to disregard words in the Act that are there. We would have to make the use of including additional tax in sections six and seven, where that phrase appears parenthetically, we'd have to disregard that and say it doesn't really mean anything. The state's position is that's for clarification. Well, clarification of what? And if the clarification was important in sections six and seven, why wasn't it important in section ten? And why wasn't that same clarification used in the definitions under section two? Now, your position with respect to the state having to look to the transferees for any supplemental tax would be consistent with the practice or policy of the executor to distribute the estate once all taxes were paid and bills, et cetera. That's correct. And not hold anything back. That's correct. And in reliance on the discharge, but I think it's also consistent with the practice that he who makes the money pays the tax. And the personal liability provisions, I think, therefore extend only to that tax that is the estate tax that's defined under the Act and falls under that first return that's filed. And by the way, the first return that was filed in this case by Mr. Cole was filed after he had hired accountants to review the estate and value the estate. And in fact, he overpaid. He paid $127,000. The tax liability was quite a bit less than that. He received a refund of $45,000. So when he gets the discharge, it would be reasonable to conclude that the discharge means what it says. It is a complete release, not partial, not interim, not temporary, not contingent, not conditional. So you're saying the release is unconditional as to him personally? As to him personally, yes. I don't mean to cut you off, but if the state determines there is additional tax because now the IRS has audited and said all your numbers have changed, they have the right to pursue that tax, perhaps the obligation to pursue it, but not against the executor who no longer holds anything, but to those persons who receive the property. The transferees, right. But what about the language in the certificate of discharge, which is something like on the basis of the information submitted? Doesn't that imply that it would only be a discharge as to the tax that was due and paid at that time? It does imply that, Your Honor. What I think is interesting about that is that in Section 6 and 7 of the Act, because they refer to supplemental filings, it is clearly anticipated by the General Assembly that there could be a supplemental tax. Yet they chose to word the discharge document as they did. So knowing that there could be supplemental tax, they still chose to word the discharge document in Section 10C of the Act as they did, without including additional tax liability for the executor. And again, this is a matter of, I think we agree that there needs to be strict construction, but we also agree that there needs to be a reasonable construction. And reasonable to me means we don't ignore words that are there and we don't add words that aren't. We read the statute as it is, and that's exactly what the trial court did. Now, as to the discharge, to go more to your point, Your Honor, about what it says, it specifically says it's the complete release of all the property of this estate, all the property, not some of it, but all of it, from the lien, and it says the lien, which implies that there's not a second lien that could be imposed. It's the lien. It doesn't say any liens. It doesn't say the liens. It says the lien imposed by the Illinois estate tax law and, again, the discharge, not a discharge, the discharge, from personal liability of the executor of this estate for the estate tax, and this is a critical part that is not really briefed, penalties and interest imposed by the Illinois estate tax law. So if for some reason the court were convinced that there should be summary judgment for the plaintiff in this case as to the amount of the tax, there still would be no personal liability for penalties and interest imposed by the Illinois estate tax law. The quarrel is over whether additional tax is, in fact, a new tax or not a new tax. Mr. Turner, if I understood correctly, answered one of Your Honor's questions by saying it is a new tax. They have to say it is a new tax for purposes of escaping the real consequences of the discharge, but if it is a new tax, then how do they explain Section 6, 7, and reconcile that with Section 10? The release itself is extraordinarily clear in terms of what it gives to the executor. What it is not clear about is what the state contends that it gives, and the state is contending that it gives conditional releases. It doesn't say conditional anywhere, and although it does say on the basis of information submitted, that's the same information that the state has, it's the same information that the executor has, and there was absolutely no qualification in the release language of the discharge to inform or advise the executor  And as we argued in our brief, if the executor receives this discharge, if he has any issues or requests for clarification, what might he do? He might go to Section 6 and read about additional tax. He might go to Section 7 and read about additional tax and see references to supplemental returns in both of those sections, but then read Section 10 and not see any personal liability for additional tax. And then what does he rely on? He has a section of a statute that says you don't have personal liability, and you've got a discharge that says you don't have personal liability. I think at that point he feels pretty comfortable that he doesn't have personal liability, and I think he has a right to rely on that. In terms of whether the statute is ambiguous or not... But that's all premised on the proposition that based on the information provided does not make the whole thing conditional. Correct. Because based on the information provided, it doesn't suggest anywhere in the statute that there could be supplemental, additional, extra tax liability personally for the executor. Okay, so you're not arguing whether or not there would be additional tax, but that it's not a personal liability. It's a really narrow issue on this, yes. Although this wasn't strictly addressed in Mr. Turner's oral argument, I know if I didn't mention something about the Illinois Rules of Evidence, Justice Hudson might be disappointed in me. I'm sorry, I didn't hear you. If you didn't mention something about... If I didn't mention something about the Illinois Rules of Evidence... It's okay. The Rules of Evidence, absolutely. He would be disappointed. I don't believe that Section 901.1 or Section 901.11 affords the plaintiff the opportunity to take a return without foundation and admit it into evidence in this case to try to recover that amount of money. Well, it's a self-authenticating document, is it not, with the seal? To an extent, it is to an extent. And the business record is an exception to the hearsay rule. It is, however, the document is not complete. The document is not complete. The complete document, as you can tell from the bottom of the page of the form, I'll give you the exact record page, it is C-679 under signature instructions. It says, an attorney or agent may sign this waiver provided the, and it cuts off. The document that has been provided attached to the complaint is incomplete in that regard, but it's an important instruction regarding signature. That's because you just find that it just ends and it's not a complete sentence. And we have the complete form, which is at page 731 of the record. It says, an attorney or agent may sign this waiver provided the action is specifically authorized by a power of attorney, which, if not previously filed, must accompany this form. What the State has tried to do is incorporate the signature on the Form 890 from Mr. Salovey, and they're trying to use this document to prove the tax. But they don't even have the requisite information on the document itself from the IRS for the IRS to say that the form is right. And if you look further, maybe it's too technical to get into the IRS manual that the plaintiff cited. There's no foundation for it, but if you look at the IRS manual that they've been referenced to, it specifically states that the documentation has to be complete. They can't have incomplete documentation, as they do. So I think the Illinois Rules of Evidence do not provide a catch-all mechanism for the State without, I don't know if that hurts you, without some foundational testimony or an independent audit and assessment to try to bring in this tax liability on summary judgment. I don't believe that there's any reason to get to that issue because I think under Section 10C there's no personal liability. I think, furthermore, that the discharge provides complete discharge for personal liability for my client. So I don't think you have to get to the evidentiary issue. But if you did, I believe that would be enough support. Back a little bit further in your argument, you talked about that even if there is personal liability for the tax, there would not be personal liability for the interest and penalties. Correct. Under your scenario that basically the State really should go after the entity or party or persons who receive the property, who should pay the penalty and interest? I believe they'd be the same. Okay, but now I'm a transferee and I say, hey, you gave me this property. You said everything was fine. Here's the discharge. And now I'm on the hook for interest in the hundreds of thousands of dollars? You're going to have some disappointment. Are you going to give rise to additional litigation where the transferee now third parties in the executor? Already did. Absolutely it does. It invites litigation, transferees to executor. But what it does is it says he who earns the money or makes the money or gets the money or gets the property pays the tax. I got that part, but what about the penalties and interest? The penalty, whether it can be, whether a transferee may rely on the discharge, which under Section 16 of the Act it suggests that a transferee can rely on that discharge, they may not be able to seek any penalties or interest for additional tax. The State, I'm sorry. And so your position is the State doesn't get penalties and interest as long as they gave a discharge? Not from the executor. Okay. Can they, under your scenario, would you suggest that they can pursue the transferee for penalties and interest? I would, but I would also say that under Section 16 of the Act there is reference, I want to make sure I have the right section, to the discharge applying also to transferees. I want to make sure I have the right section here. Because I responded out of order here. There we go. I'm sorry, it's not Section 16. Yes, 16A says transferees are also released by the discharge. The Attorney General may prescribe rules. This is from 16A. May institute and prosecute suits and proceedings as may be necessary and proper. I must be reading from the wrong section, Your Honors. I apologize because my notes don't match what the statute says. I'm confusing myself and the Court, so I apologize for that. Okay. The bottom line, though, is if I would accept your argument that it is the transferee, not the executor, who would remain, we'll say, personally liable for the tax, that still leaves the interest in penalties. And if I'm hearing you correctly, you say under any scenario the executor should not be responsible for that. Okay. But tell me how the transferee, then, becomes responsible for penalties and interest under your analysis. That's an excellent question. I can't say that I can provide a cogent answer that conforms with my understanding of constitutional law. But aren't we obliged to interpret any statute so that it's consistent and we don't exclude some portions, include other portions, give undue influence, et cetera? So that's a pretty big chunk to leave out of an analysis. Well, it's part of the paradox of Section 8 of the statute. The paradox of Section 8 says that the state can pursue tax for an amount due as shown on a refund, or as shown on a return. Excuse me. There's no return here. There's no return, no supplemental return filed. So the paradox of the statute says they can't even collect the tax if the tax has to be shown due on a return. So I would say that the entire Section 8 is a bit of a paradox, especially when we look at Section 10C. That's an interesting point. It still doesn't get to the issue. I can't resolve that point to a way that satisfies my understanding of constitutional law, Your Honor. Okay. Fair enough. Any other questions? Counsel, any final remark? I know your time is up. Simply we pray that the court affirms some re-judgment for Mr. Cole. Thank you. Do you wish to reply? Yeah. Thank you. So why can't you pursue the transferee for the tax? Your Honor, there's two answers to that question. Okay. But the first one is because the act gives the Attorney General the discretion, right, to go after and join several different parties, right? It can go after for the liability, for any unpaid tax. It can go for, against the executor or the federal filer, for personal liability for the entire one. Under 10C, it also can go after the transferees under their liability to the extent that they've received the property. So that liability is limited to the extent that they've received, that they actually are transferees. And then also then there's the lien as well to go after whoever is in possession of the estate property. That's under Section 10A. But there's joint federal liability. There's nothing in the act that says that the Attorney General must go after all of them, must go after a certain party. It provides in similar to that the Internal Revenue Code in this regard. Doesn't that sort of bolster counsel's argument? No, Your Honor, because first of all, it just shows that we can go after different parties, that they're meant all to be held. But also, under counsel's reading, under defendant Cole's reading of the act, we wouldn't be able to go after anybody. And that is actually the implications of their reading of the act is that we cannot go after the transferees. Because if there is no liability under Section 10C for the executor for the Illinois transfer tax because it excludes the additional tax, that would be true also for the transferees who in that same provision, in the same sentence, are being held liable for the same Illinois transfer tax that's not paid. And the same thing is true in Section 10A for the lien. Actually, in Section 10D of that, Section 10 is all of our enforcement provisions, which gives us the authority, the Attorney General the authority, to institute the collection action, to collect the tax. It's for the Illinois transfer tax. So if you're going to accept the Circuit Court's reading and defendant Cole's reading that Illinois transfer tax never includes an additional tax that becomes due under Section 7, then none of the enforcement provisions of Section 10 are going to apply to that additional tax at all. You essentially negate Section 7 entirely, even though it does clearly impose a duty to pay the tax and any additional tax. But then it provides no enforcement provisions whatsoever for us then to collect it. Basically, you have to depend on an honor system. But yet this all started because you chose to go after the executor for personal liability rather than the transferee. Correct, Your Honor. We did make the choice to go after the executor. It was our decision to make. He's the one who's personally liable for the entire liability. Also, we do not really know who the transferees are. That is, the best we can do is look at the will to see who they were intended to be originally to say we got those documents. But again, the executor is the one who has the information and knowledge. He knows who he's made the distributions to and how much to everybody and who's got it. Now, he's got under Section 11 of the Act, there is essentially a reimbursement action, a contribution right. If you end up paying the tax but there's others, you have an ability, again, sort of piggybacks in the federal system, to the extent that you would have an ability under federal estate tax or federal law or state law of any kind to seek compensation for any federal estate tax that you would have paid. Then you can also go after it for any Illinois estate tax you've paid. Now, all that's doing is incorporating, actually, a very long and complicated contribution law that's developed under the federal estate tax system. When someone pays, there's various provisions which they can then go after the other parties, the transferees of the estate in order to seek contribution for portions of the estate tax. And then it actually gets even more complicated because that federal estate tax law incorporates the state law,  Well, tell us his argument that even if we accept your argument that you are limited to the tax, not the penalties and interest against the executive. Our same argument that the certificate only applies to the currently imposed Illinois estate tax also applies. If you read the sentence, it discharges him for the tax penalties and interest imposed under the Illinois estate tax law. Therefore, the certificate is being, all it's discharging is whatever penalties and interest have already been imposed under the act and are due under the act. It wouldn't refer to any future penalties or interest which have not yet become due under the act. And this is, again, consistent as you pointed out that the initial language in the certificate also then, you know, initially states, Look, on the basis, quote, on the basis of the information submitted, end quote, we've determined this is what the tax is. And then we've determined that you have fully, if you've discharged this tax that we determined. In effect, haven't you amended the original return that was filed by the taxpayer, the filer? No, Your Honor. Actually, that's an important point. This is different than the federal. This is a difference between us and the federal estate tax system. And when you have an increase, you're amending the federal estate tax return, you know, due to an increase in the valuation of the estate. Here, because we're piggybacking the Illinois estate tax system, because our tax comes due, the estate tax comes due under our, under the Illinois act, based upon events taking place in the federal estate tax process, we don't have an amended return. Instead, Section 7 requires the filing of a supplemental return. And that's the reason, you know, there's a whole new return that's being filed for you. So didn't you supplement, you, in effect, have filed the supplemental return? You could say that as an analogy, but I wanted to point out that we haven't actually, just because it's important. When someone files a supplemental return, that actually triggers our statute of limitations to collect. And I would say under the act that that statute of limitations hasn't occurred yet, because no one's filed a supplemental return yet. But we are seeking the additional tax that they were required to pay along with a supplemental return, had they filed it. Had they filed a supplemental return? Correct, Your Honor. Okay. I had one question regarding the evidentiary issue. Counsel argued that the document you were relying on wasn't complete, and therefore wouldn't provide the basis for an exception to the hearsay rule for admission. How do you respond to that? No, Your Honor, the document that we submitted in the Record and Appeal is one of the two. There's two separate documents. One is the IRS report that establishes the actual adjustment, the increase to the tax. And then there's the Form 890 waiver. That's the document that counsel's referring to. That's the document that evidences the estate's agreement to that increase. And what is correct is, yes, in the Record and Appeal, the document, there's a last page for the facts that has the last sentence on it, on the instructions on it, which, as far as I know, is not in the Record and Appeal. I don't know the reason that was left out. I'm sure there's no intentional. Actually, I believe the missing language only enforces our argument, because the only thing that was missing from that document was that the Form 890 waiver says on it that the IRS, the examiner, is not supposed to accept this document, this form waiver, unless they have a power of attorney already for any legal counsel who's signing it on behalf of the estate. Therefore, this is a certified copy. It's been certified under seal from the IRS that we received from the IRS of this Form 890 waiver that was executed by Dean Sullivan, the executive for the estate. If, under their own rules, they're not supposed to accept this document unless they have a power of attorney, that's obvious evidence there, the fact that they have this in their file certified under seal, that it's a true document for what it is, that they've got the power of attorney. There's other evidence, too, that they have a power of attorney for the lawyer for the estate. I mean, we have the original federal state tax return, Illinois state tax returns, which identify Mr. Sullivan as the estate tax lawyer. We have the examination report, which represents on it that they discussed the audit first with Mr. Sullivan as the lawyer for the estate. And, again, the Internal Revenue Manual that we cite says that the examiner is not supposed to discuss the audit with any legal – with any attorneys or lawyers unless it already has a power of attorney for that lawyer to represent the estate with regard to the audit. So we have reasons to infer – to reasonably infer that, in fact, that power – the IRS has that power of attorney. Mr. – Mr. – sorry, Defendant Coleman. Mr. Sullivan, we just assume the completeness of the document? Is that what you're saying? Yes, Your Honor. We know that the only thing that was missing was the last couple lines on the document. How do we know that? I'm sorry, Your Honor. How do we know that? Well, he's provided the complete form. Not in the appellate record. Yes, it is in the record of appeal. He's provided – oh, but we don't have the complete form, I see what you're saying. Yes, Your Honor, we don't have that last bit. Okay, so if that – I do not believe that actually raises an ambiguity. This is what we received from the IRS? This document that was signed under the seal? The IRS sent you an incomplete document? Is that your point? I don't know if it had the last page in that. I mean, that's not even the last page, Your Honor. It's literally, like, the last phrase of the sentence in the form instructions. That's – it's missing. That's your perspective. My perspective is it stands. Okay, Your Honor. I mean, right? Yes, Your Honor. Okay. Do you have any other questions, Your Honor? My last question, really, is just a policy question. If this is so, that any time the IRS does an audit, and two and a half years prior to that, because you said it was a three-year window, executor has accepted the release, signed off on everything, shipped out all the property, file closed, I'm done, and then you come back and knock on his or her door for personal liability, why would anyone in the state of Illinois want to be an executor of any estate? Because, well, one reason is Mr. Defendant Cole was paid for that. That's reflected in the document. He was paid to be the executor, and other lawyers and non-lawyers continue to be paid to be executors. This has been the system for the last 20 years, and they still continue to do it. Under the federal system, they also face personal liability. Let's look at the rest of the population of Illinois. There's hundreds and hundreds and hundreds of people who are executors for small estates or family member estates. Don't get paid. Why would you ever want to expose yourself to that kind of liability? Aren't you saying to people, beware? Don't do someone a favor. Don't do a family member a service. Are we going to wind up saying the only people that are going to want to be personally responsible are banks and institutions that have insurance to cover these issues? No. What we're saying to them is that you must be responsible, that if you are making a valuation on your taxes— But you're not making—that's the point. The executor isn't the one making the evaluation. As much as any taxpayer is, they are. Yes, I'm sorry. I disagree. I'm not a taxpayer. I'm an executor. The transferee, in effect, should be the taxpayer. Well, the— The executor may sign off on the check. The executor is not paying the tax. The executor is taking money out of the estate and says, here you go. They're not paying the tax. You're correct. I beg to differ. I mean, my point is that an executor is different than a taxpayer. They're different in the aspect that it's not their money. It's someone else's money. But exactly for the reason you said, we don't want them just signing off on it. We want them to take responsibility. That's what the duties and obligations being imposed on them as an executor are. That they need to responsibly make that valuation. If they need to hold back a portion of it— This is not a question of whether their actions were reasonable. This is strict liability. It is, Your Honor, yes. They are required, yes. They are. If they don't hold any money back, then they will be personally liable. They'll be forced then to try to seek contribution from the transferees if we go after— if the attorney general goes after them for compensation. Which they are going to do. Correct, Your Honor. We've done that here. Okay. Any other questions? Thank you. Your Honor, any final comments? No, thank you. I just—based on both our arguments in the briefing here, we ask that you reverse the circuit court's order and grant some re-judgment in our favor. Okay. Fair enough. Thank you very much.